# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER FOGERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-00636-AGF |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Jennifer Fogerty is not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's statement of facts (ECF No. 16-1) and Defendant's response with additional facts (ECF No. 19-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on May 13, 1980, filed an application for disability

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

insurance benefits on February 22, 2016, alleging a disability beginning February 11, 2015, due to a previous head injury (at age 14), arthritis, fibromyalgia, stress and anxiety, Hashimoto's thyroiditis, thyroid cancer resulting in a thyroidectomy, asthma, and back pain. Tr. 217. Her application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ"). On April 18, 2016, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert ("VE"). By decision dated July 23, 2018, the ALJ found that Plaintiff had the RFC to perform light work as defined by the Commissioner's regulations, except for the following limitations:

> [She] should avoid climbing ladders, ropes, and scaffolds, working at unprotected dangerous heights or around unprotected dangerous machinery, and jobs exposing a person to whole body vibrations. The claimant is limited to occasionally stooping, kneeling, crouching, and crawling. The claimant should avoid concentrated exposure to noxious fumes, odors, dusts, and gases and extremes of heat, cold, and humidity. The claimant is limited to simple and/or repetitive work not requiring close interaction with the public.

Tr. 19.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., routing clerk, photocopy machine operator), which the VE had testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. On January 23, 2019, the Appeals Council denied Plaintiff's request for review. Thus, Plaintiff has exhausted her administrative

2

remedies, and the ALJ's decision is the final decision of the Commissioner for this Court's review.

Plaintiff contends that the RFC is not supported by substantial evidence. More specifically, Plaintiff asserts that the ALJ failed to properly weigh the evidence concerning her mental impairments. Plaintiff asks the Court to reverse and remand the decision for an award of benefits or further evaluation.

**The ALJ's Decision (Tr. 15-23)**

The ALJ found that Plaintiff has the following severe impairments: organic mood disorder, depression, anxiety, degenerative disc disease of the lumbar spine, fibromyalgia, and asthma.[2] However, he found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations. Plaintiff does not challenge the ALJ's findings with respect to her physical conditions. With respect to Plaintiff's mental impairments centrally at issue here, the ALJ determined that those impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive compulsive disorders). These conditions are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one extreme or two marked functional limitations in her ability

---

[2] The ALJ also noted that Plaintiff had a history of thyroid cancer, which was in remission and not a severe impairment.

to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).[3]

In applying "paragraph B" criteria here, the ALJ found that Plaintiff had only: (1) a moderate limitation in understanding, remembering, or applying information; (2) a mild limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, and maintaining pace; and (4) a mild limitation in adapting and managing herself. Tr. 18. In arriving at these findings, the ALJ reasoned that, although Plaintiff does not like crowds and has some difficulty with memory and processing due to her head injury, she is able to care for her children, her pets, and herself; she engages in social activities; she is able to go shopping and to doctors' appointments and her children's school; she can pay bills and handle money; she prepares meals and takes care of the household; and overall she maintains the ability to carry out normal daily functions. Tr. 18. Thus, the ALJ concluded that Paragraph B criteria were not satisfied.

When Paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "Paragraph C criteria," used to evaluate "serious and persistent" mental disorders. Paragraph C criteria require a medically documented

---

[3] These criteria became effective on January 17, 2017, and apply to claims that were pending at that time. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,137, 66,138. (Sept. 26, 2016). Plaintiff's claim was filed in February 2016 and denied at the administrative level in July 2018.

4

history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life. Here, the ALJ observed that the evidence failed to establish the presence of Paragraph C criteria.

After careful consideration of the entire record, the ALJ found that Plaintiff has the RFC to perform light work, with the limitations described above. In determining Plaintiff's RFC and limitations, the ALJ reviewed the following evidence.

Claimant testified that she obtained her GED and completed a year of secretarial school. She said that she has been unable to work since February 2015 due to problems with memory and focus. She lives with her three children. She can drive, shop, and take care of her personal needs, her children, and the household. She needs reminders to do things, is often unmotivated, and spends much of her time lying down. She has difficulty sitting, standing, and walking due to pain and discomfort. She takes medication for anxiety and depression, for joint inflammation, and for allergies. The ALJ found that Plaintiff's medically determinable impairments could reasonably expected to cause her alleged symptoms but that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record.

Specifically, with respect to Plaintiff's claim that she is unable to work due to

problems with memory and concentration, the ALJ found that the record did not support the severity of Plaintiff's complaints. The ALJ referred to a neurological evaluation conducted by Dr. Michael Oliveri, a psychologist who also participated in Plaintiff's care after her head injury in 1994. Tr. 20, 657-660. Dr. Oliveri noted that, while Plaintiff reported severe cognitive problems impeding her ability to work, testing revealed a general preservation of brain function and only borderline/mild neurocognitive disorder. Tr. 20, 660. A significant memory disorder was not supported. *Id*. The ALJ further noted that Dr. Oliveri's assessment was consistent with other evidence in the record indicating, for instance, that Plaintiff had normal memory and judgment and unremarkable neurological assessments. Tr. 333, 354. Similarly, notes by Plaintiff's treating neurologist, Dr. Min Pan, indicate unremarkable MRI/EEG testing and normal neurological function, albeit with some psychogenic memory loss. Tr. 363. An opinion by a state agency psychological consulting examiner, Dr. Mark Altomari, was also consistent with the aforementioned objective findings. Tr. 21, 82-91. The ALJ gave great weight to Dr. Altomari's opinion. Conversely, the ALJ gave little weight to a medical source statement by a treating psychologist, Dr. Richard Gestring, indicating that Plaintiff had extreme functional limitations, because his opinion was inconsistent with treatment notes and other evidence in the record. Tr. 21, 910-913.

    Based on the foregoing, the ALJ ultimately concluded that an RFC of light work, with the physical limitations previously described, was consistent with the evidence. The ALJ then referred to the VE's testimony that, given Plaintiff's age, education, work

experience, and RFC, Plaintiff would be able to perform occupations such as routing clerk and photocopy machine operator, of which there are 43,000 in the national economy. Accordingly, the ALJ found that Plaintiff is not disabled under the Act.

In her brief before this Court, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly weigh the various medical opinions in the record.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and

adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.  *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).  A reviewing court

"must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**RFC Finding and Weight of the Evidence**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* The ALJ is not required to accept every opinion by an examiner but must weigh all the evidence in the record. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).

9

Under the applicable social security regulations,[4] the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and the Commissioner "may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.* The regulations require that the ALJ give good reasons for the weight afforded to a treating physician's evaluation. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005); 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff asserts that the RFC is not supported by substantial evidence because the ALJ failed to properly weigh the medical opinions in the record. More specifically, Plaintiff essentially argues that the ALJ cherry-picked particular notes and

---

4     For claims filed before March 27, 2017, like Plaintiff's, the regulations provide that if "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Social Security Administration] will give it controlling weight," and further provide that the Administration "will give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527.

For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c.

opinions supporting the RCF while ignoring others prescribing more restrictive limitations. As an example of the latter, Dr. Oliveri indicated that Plaintiff required redirection and exhibited obsessive and ruminative thinking (Tr. 658-659), and Dr. Altomari indicated that Plaintiff may need reminders for some tasks. Tr. 74. Plaintiff also refers to records of her treatment with Dr. Jeffrey Pevnick, of Psych Care Consultants, which the ALJ did not specifically reference but which generally confirm Plaintiff's anxiety and depression, treated with medication. Tr. 988-1019. Plaintiff's reliance on these excerpts of the record is not a persuasive basis for reversal, particularly under this Court's standard of review. The interpretation of a physician's findings is a factual matter left to the ALJ's authority. *Mabry*, 815 F.3d at 391. Though the ALJ's summary of the evidence is far from exhaustive, the overall record contains substantial evidence supporting his conclusions, and an ALJ is not required to accept or even discuss every opinion by every examiner. *Id.*; *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). Further, while this Court must take into account "evidence that both supports and detracts from the ALJ's decision, … as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

Additionally, Plaintiff argues that the ALJ relied too heavily on Plaintiff's daily

activities. While Plaintiff is correct that a person's ability to engage in chores or hobbies does not demonstrate an ability to work (*Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)), it is proper for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of claims of incapacity. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (no error where ALJ discounted claimant's subjective complaints disabling pain where his activities and medication regimen suggested otherwise). "Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[5] Here, the ALJ noted Plaintiff's capabilities according to her own statements and concluded that the severity of her subjective complaints was not supported by her daily activities or by the objective evidence, particularly the neuropsychological assessment conducted by Dr. Oliveri, who, the Court observes, repeatedly noted an over-reporting of symptoms not consistent with objective markers.[6] Tr. 19-20, 659.

Finally, Plaintiff argues that the ALJ erred in discounting the treating physician opinion of Dr. Gestring. But the ALJ gave a good reason for doing so: Dr. Gestring's opinion indicating severe functional limitations was inconsistent with other evidence,

---

[5] Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective symptoms. *See e.g., Bryant v. Colvin*, 861 F.3d 779 (8th Cir. 2017).

[6] For example, "her level of endorsement exceeds neurologic reference groups." "The validity of the [self-questionnaire] profile is somewhat qualified by possible symptom over-endorsement particularly as it relates to somatic and cognitive symptoms. Of note, she is endorsing a noncredible level of somatic and cognitive symptoms."

namely Dr. Oliveri's evaluation and Dr. Altomari's opinion. An ALJ may discount or even disregard a treating physician's opinion where other assessments are supported by more thorough evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Papesh*, 786 F.3d at 1132. Dr. Gestring's Mental RFC questionnaire responses do not supply the thorough assessment contained in Dr. Oliveri's report. In fact, Dr. Gestring actually refers to Dr. Oliveri's report for additional insight as to Plaintiff's intellectual functioning. Tr. 910. Given this record, the ALJ's assignment of weight was justified.

## CONCLUSION

When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision. *Chaney*, 812 F.3d at 676. On the present record, the Court concludes that the ALJ's decision was well within the available zone of choice. The ALJ's decision reflects that he considered the whole record, and his RFC determination is supported by substantial evidence therein.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of March, 2019.